**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on May 3, 2018**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** |
| **v.** | : | **GRAND JURY ORIGINAL** |
| **SYNERGY LINK CORP,** | : | |
| **ADISON UMRARONG,** | : | **VIOLATIONS:** |
| **and** | : | **22 U.S.C. § 2778 (Arms Export Control Act)** |
| **SIRIPORN DOMSA, aka EDD,** | : | **22 C.F.R. Parts 120-130 (International Traffic in Arms Regulations)** |
| **Defendants.** | : | **18 U.S.C. § 1956(h) (Conspiracy to Launder Monetary Instruments)** |
| | : | **18 U.S.C. § 1956(a)(3)(B) (Sting Money Laundering)** |
| | : | **31 U.S.C. § 5324(a)(3), (d)(2) (Structuring)** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting and Causing an Act to be Done)** |
| | : | **Forfeiture: 18 U.S.C. §§ 981(a)(1)(C); 18 U.S.C. § 982(a)(1); 21 U.S.C. § 853(p); 22 U.S.C. §401(a); 28 U.S.C. § 2461(c); and 31 U.S.C. § 5317(c)** |

**INDICTMENT**

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### Introduction

1. Defendant **SYNERGY LINK CORP** ("**SYNERGY**") is a company, incorporated in Nevada, but with a physical office in Los Angeles, California, that provides "freight forwarder" services. As a freight forwarder, **SYNERGY** serves as an expert in the logistics required to export large cargo and smaller parcels around the world, using various means of transportation, including airplanes, ships, trucks and railroads.

2. Defendant **ADISON UMRARONG** ("**UMRARONG**") is a resident of California and a co-owner and manager of **SYNERGY**.

3. Defendant **SIRIPORN DOMSA**, also known as "EDD" ("**DOMSA**"), is a resident of California and a co-owner and manager of **SYNERGY**. **DOMSA** is also **UMRARONG**'s mother.

### The Arms Export Control Act

4. The Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorized the President of the United States to control the export of "defense articles" by designating items on the United States Munitions List ("Munitions List"), which is codified at 22 C.F.R. Part 121.

5. The AECA and its attendant regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, required a person to apply for and obtain an export license from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, before exporting from the United States arms, ammunition, or articles of war, which were all categorized as defense articles under 22 U.S.C. §§ 2778(b)(2), and 22 C.F.R. Parts 120.1 and 121.1. In the application for an export license, the

exporter was required to state, among other things, the nature of the defense articles to be exported, the end recipient of the defense articles, and the purpose for which the defense articles were intended.

6. The defense articles, which were subject to such licensing requirements, were designated on the Munitions List. Those designations were made by the State Department with the concurrence of the Defense Department under 22 U.S.C. § 2778(a)(1) and 22 C.F.R. Part 120.2.

7. Category I of the Munitions List included firearms, as well as firearms components, parts, and accessories.

8. The AECA and ITAR were in effect at all times relevant to this Indictment.

9. At no time did **SYNERGY**, **UMRARONG**, or **DOMSA** apply for, receive, or possess, or cause others to apply for, receive, or possess a license from the DDTC, located within the District of Columbia, to export firearms components, parts, and accessories from the United States to Thailand. Nor at any time did **SYNERGY**, **UMRARONG**, or **DOMSA** register as defense article exporters or brokers.

## COUNT ONE
**(Violation of the Arms Export Control Act)**

10. On or about March 21, 2019, within the District of Columbia and elsewhere, defendant **ADISON UMRARONG** did willfully attempt to export and cause the export from the United States to Thailand of firearms parts, that is, three upper receivers with barrels, and five 10 round magazines, all of which were and are designated as defense articles on the USML, the export of which was and is controlled under the Arms Export Control Act, without having first obtained from the DDTC the required license or other written approval for such export.

(**Unlawfully Exporting and Attempting to Export Arms and Munitions from the United States**, in violation of Title 22, United States Code, Section 2778(b)

and (c); and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1; **Aiding and Abetting and Causing an Act to be Done**, Title 18, United States Code, Section 2)

**COUNT TWO**
**(Conspiracy to Commit Money Laundering)**

**The Conspiracy**

11. The allegations set forth in Paragraphs 1 through 10 of this Indictment are re-alleged and incorporated by reference herein

12. From on or about July 2015 through January 2019, within the District of Columbia and elsewhere, defendants **SYNERGY LINK CORP ("SYNERGY"), ADISON UMRARONG ("UMRARONG")**, and **SIRIPORN DOMSA ("DOMSA")**, also known as "EDD," did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1956(a)(3)(B), by conducting or attempting to conduct a financial transaction involving property represented by a person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of Title 18, United States Code, Section 1956, to conceal or disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to wit, the illegal shipment of arms to Thailand in violation of the Arms Export Control Act.

**The Objects of the Conspiracy**

13. The objects of the conspiracy were

a. to illegally enrich the coconspirators; and

b. to conceal and disguise the nature, location, source, ownership, and control of property believed to be proceeds of the coconspirators' scheme.

**The Manner and Means of the Conspiracy**

14. Among the manner and means by which **SYNERGY, UMRARONG,** and **DOMSA** would and did carry out the objectives of the conspiracy were the following:

a. It was part of the conspiracy that **UMRARONG** and **DOMSA** owned and operated **SYNERGY**, which was primarily a freight forwarder, but which also offered services of transmitting funds on behalf of other individuals using **SYNERGY**'s bank accounts and the bank accounts of other co-conspirators.

b. It was further part of the conspiracy that **UMRARONG** and **DOMSA** conspired and agreed to assist others in transferring funds represented to be derived from illegal arms exports to Thailand and Australia, in order to conceal the nature and source of those funds.

c. It was further part of the conspiracy that **UMRARONG** and **DOMSA** conspired and agreed to use **SYNERGY**'s bank accounts and the bank accounts of other co-conspirators to transfer those funds.

**Overt Acts**

15. On or about the dates listed below, in the District of Columbia and elsewhere, the defendants committed at least one of the following overt acts in furtherance of the conspiracy:

a. Between July 21, 2015, and September 4, 2015, **UMRARONG, DOMSA, and SYNERGY** conspired to assist a Confidential Informant (the "CI") in transferring $12,000.00 represented to be proceeds of exporting firearms to Thailand, in violation of the Arms Export Control Act. **UMRARONG** instructed the CI to deposit the funds in the form

of cash and in amounts less than $10,000 into an account owned by **SYNERGY** for the express purpose of avoiding the filing of a Currency Transaction Report. Law enforcement agents acting on behalf of the CI made two $6,000 deposits into the bank account at two Bank One branches in Maryland. **UMRARONG** transferred the funds from an account owned by **SYNERGY** to an account designated by the CI in Australia.

b. Between on or about June 29, 2016, through July 9, 2016, **UMRARONG** and **DOMSA** agreed to transfer $46,000.00 in funds represented to be proceeds of illicit firearms sales in Thailand. As part of this activity, **UMRARONG** and **DOMSA** both directed the CI to deposit a total of $50,000 into a bank account in the name of **UNINDICTED CO-CONSPIRATOR 1** in amounts less than $10,000 to avoid the filing of a Currency Transaction Report. **DOMSA** informed the CI that the transfer would include an eight percent commission fee for **UMRARONG** and **DOMSA**. Thereafter, at the direction of **DOMSA**, $50,000 was deposited into **UNINDICTED CO-CONSPIRATOR 1's** bank account at various bank branches, some of which were located in the District of Columbia. After the funds were received in **UNINDICTED CO-CONSPIRATOR 1's** account, **UMRARONG** transferred $46,000 from an account owned by **SYNERGY** in the United States to an account designated by the CI in Australia.

c. Between on or about November 2, 2016, through November 29, 2016, **UMRARONG** and **DOMSA** agreed to transfer $130,369.50 in funds represented to be proceeds of illicit firearms sales in Thailand. As part of this activity, **UMRARONG** directed the CI to deposit a total of $144,855.00 into several bank accounts in the names of **UNINDICTED CO-CONSPIRATOR 1**, **UNINDICTED CO-CONSPIRATOR 2**, and **UNINDICTED CO-CONSPIRATOR 3** (collectively, "**UNINDICTED CO-CONSPIRATORS**") in amounts less than $10,000 to avoid the filing of a Currency Transaction Report. **UMRARONG** instructed the CI that the transfer would cost a ten percent commission. Thereafter, $144,855.00 was deposited into the designated bank accounts at various banks, some of which were located in the District of Columbia. After the funds were received in the accounts of the **UNINDICTED CO-CONSPIRATORS**, **UMRARONG** transferred $130,369.50 from an account owned by **SYNERGY** in the United States to an account designated by the CI in Australia.

d. Between on or about March 22, 2018, through on or about June 20, 2018, **UMRARONG** and **DOMSA** agreed to transfer $50,000.00 from the United States to Thailand as part of an agreement to transfer a total of $200,000 in funds represented to be proceeds of illicit firearm sales in Thailand. As part of this activity, **UMRARONG** directed the CI to deposit a total of $50,000.00 into an account held by **SYNERGY** at

Bank Two in amounts less than $10,000 to avoid the filing of a Currency Transaction Report. **UMRARONG** informed the CI that the transfer would cost a fifteen percent commission fee, which could be paid separately in cash. Thereafter, $50,000.00 was deposited into **SYNERGY's** bank account at various banks in the Los Angeles, California area via six separate bank deposits over the course of three days. After the funds were received in the **SYNERGY** account, **UMRARONG** directed the equivalent of $50,000.00 in Thai Baht to be deposited into a Thai account designated by the CI through two cash deposits by **UNINDICTED CO-CONSPIRATORS 1 AND 2**, and one wire transfer from a Thai account likely owned by **UNINDICTED CO-CONSPIRATOR 3**.

(**Conspiracy to Commit Money Laundering,** in violation of Title 18, United States Code, Sections 1956(h) and (f))

**COUNTS THREE THROUGH SEVEN**
**(Sting Money Laundering)**

16. The allegations set forth in Paragraphs 1 through 15 of this Indictment are re-alleged and incorporated by reference herein.

17. Between on or about November 2, 2016 and on or about November 29, 2016, within the District of Columbia and elsewhere, and in the extraterritorial jurisdiction of the United States, defendants **SYNERGY LINK CORP, ADISON UMRARONG** and **SIRIPORN DOMSA**, also known as "EDD," did conduct and attempt to conduct a financial transaction involving property represented by a person at the direction of, or with the approval of a Federal official authorized to investigate or prosecute violations of Title 18, United States Code, Section 1956, to be proceeds

of specified unlawful activity, to wit, exporting arms to Thailand in violation of the Arms Export Control Act, with the intent to conceal or disguise the nature, location, source, ownership and control, of property they believed to be the proceeds of specified unlawful activity, to wit, exporting arms to Thailand, in violation of the Arms Export Control Act, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

| COUNT | DATE | DESTINATION | AMOUNT |
|---|---|---|---|
| 4 | 11/10/16 | Australia | $35,369.50 |
| 5 | 11/14/16 | Australia | $44,508.50 |
| 6 | 11/23/16 | Australia | $40,401.50 |
| 7 | 11/29/16 | Australia | $10,090.00 |

(**Money Laundering**, in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and (f), and **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2).

**COUNT EIGHT**
**(Conspiracy to Structure Funds)**

**The Conspiracy**

18. The allegations set forth in Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated by reference herein.

19. Between on or about September 10, 2015, through on or about June 20, 2018, within the District of Columbia and elsewhere, and in the extraterritorial jurisdiction of the United States, defendants **SYNERGY LINK CORP** (“**SYNERGY**”), **ADISON UMRARONG** (“**UMRARONG**”), and **SIRIPORN DOMSA** (“**DOMSA**”), also known as “EDD,” and the **UNINDICTED CO-CONSPIRATORS**, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed with one another and others unknown to the Grand Jury to: (a) defraud the United States; and (b) commit offenses against the United States, that is, to knowingly and for the purpose of evading the reporting requirements of Title 31, United States

Code, Section 5313(a) and the regulations promulgated thereunder, structure, assist in structuring, attempt to structure and assist in structuring, transactions with domestic financial institutions, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Sections 5324(a)(3) and (d)(2).

**Object of the Conspiracy**

20. It was an object of the conspiracy to avoid causing the filing of Currency Transaction Reports at financial institutions, which are required by the Bank Secrecy Act when more than $10,000.00 in cash is deposited into an account at a financial institution on a single day.

**The Manner and Means of the Conspiracy**

21. It was part of the conspiracy that **UMRARONG** and **DOMSA** would use bank accounts belonging to **SYNERGY** to accept cash deposits that were structured to avoid the filing of a Currency Transaction Report.

22. It was part of the conspiracy that **UMRARONG** and **DOMSA** instructed others to make cash deposits into the bank accounts of the **UNINDICTED CO-CONSPIRATORS** in amounts less than $10,000.00 to avoid the filing of a Currency Transaction Report.

**Overt Acts**

23. On or about the dates listed below, in the District of Columbia and elsewhere, the defendants committed at least one of the following overt acts in furtherance of the conspiracy:

a. On or about June 29, 2016, **UMRARONG** and **DOMSA** both directed the CI to deposit a total of $50,000 into a bank account in the name of **UNINDICTED CO-CONSPIRATOR 1** in amounts less than $10,000 to avoid the reporting requirements of the Currency Transaction Reports.

b. On or about June 29, 2016, at the direction of **UMRARONG** and **DOMSA**,

$50,000 in cash was deposited, in amounts less than $10,000.00, at multiple branches of Bank One, including branches located in the District of Columbia.

c. On or about August 31, 2016, the CI asked **UMRARONG** whether **SYNERGY** could assist in transferring to Australia $144,855.00 derived from the illegal shipment of arms to Thailand. **UMRARONG** indicated he would need to consult with **DOMSA** before agreeing to transfer funds.

d. On or about November 1, 2016, **UMRARONG** sent a text message to the CI with instructions for depositing $144,855.00 into several Bank One bank accounts in the names of the **UNINDICTED CO-CONSPIRATORS** in amounts less than $10,000 to avoid the reporting requirements of the Currency Transaction Reports.

e. Between November 2, 2016 and November 3, 2016, pursuant to the directions of **UMRARONG**, $144,855.00 was deposited into the bank accounts of the **UNINDICTED CO-CONSPIRATORS**, in multiple branches of Bank One, including branches located in the District of Columbia.

f. Between November 14, 2016 and November 30, 2016, **UMRARONG**, transferred $130,369.50 to an account controlled by the U. S. government in Australia.

g. Between June 4, 2018 and June 6, 2018, pursuant to the directions of **UMRARONG**, $50,000.00 was deposited into the **SYNERGY** commercial bank account, in multiple branches of Bank Two, specifically branches located in Los Angeles, California.

h. On June 20, 2018, **UMRARONG** had $50,000.00 transferred to the CI's account in Thailand.

(**Conspiracy to Structure Funds**, in violation of Title 18, United States Code, Section 371; Title 31, United States Code, Section 5324(a)(3)).

**FORFEITURE ALLEGATION**

24. Upon conviction of either of the offenses alleged in Count One, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes, or is derived from, proceeds traceable these offenses. The United States will also seek a forfeiture money judgment against the defendants for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from, proceeds traceable to these offenses.

25. Upon conviction of either of the offenses alleged in Count One, the defendants shall forfeit to the United States, pursuant to Title 22, United States Code, Section 401(a), and Title 28, United States Code, Section 2461(c), all arms or munitions of war or other articles exported or attempted to be exported in violation of law, and any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles.

26. Upon conviction of either of the offenses alleged in Count One, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in or used in the knowing commission of the offense.

27. Upon conviction of any of the offenses alleged in Counts Two through Seven, the defendants shall forfeit to the United States any property, real or personal, involved in these offenses, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The United States will also seek a forfeiture money judgment against the defendants for a sum of money equal to the value of any property, real or personal, involved in these offenses, and any property traceable to such property.

28. Upon conviction of the offense alleged in Count Eight, the defendants shall forfeit to the United States all property, real or personal, involved in such offense, and any property traceable thereto, pursuant to Title 31, United States Code, Section 5317(c)(1). The United States will also seek a forfeiture money judgment against the defendants for a sum of money equal to the value of all property, real or personal, involved in the offense and any property traceable thereto.

29. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, 853(p); Title 22, United States Code, Section 401(a); Title 28, United States Code, section 2461(c); and Title 31, United States Code, Section 5317(c)(1)).

A TRUE BILL:

FOREPERSON.

Jessie K. Liu /KK

Attorney of the United States in
and for the District of Columbia.